STATE OF LOUISIANA

VERSUS

MICHAEL P. HIDALGO

NO. 20-KP-89

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPLICATION FOR SUPERVISORY REVIEW FROM THE
TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 18-1539, DIVISION "L"
HONORABLE DONALD A. ROWAN, JR., JUDGE PRESIDING

March 18, 2020

**HANS J. LILJEBERG**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Hans J. Liljeberg, and John J. Molaison, Jr.

**WRIT DENIED; CONVICTION AND SENTENCE AFFIRMED**
> **HJL**
> **MEJ**
> **JJM**

COUNSEL FOR PLAINTIFF/RESPONDENT,
STATE OF LOUISIANA
   Honorable Paul D. Connick, Jr.
   Thomas J. Butler

COUNSEL FOR DEFENDANT/RELATOR,
MICHAEL P. HIDALGO
   Richard H. Barker, IV

**LILJEBERG, J.**

Defendant, Michael P. Hidalgo, seeks supervisory review of his conviction and sentence for domestic abuse battery, a misdemeanor offense. For the following reasons, we deny defendant's writ application and affirm his conviction and sentence.[1]

## PROCEDURAL BACKGROUND

On March 22, 2018, defendant, Michael P. Hidalgo, was charged by bill of information with domestic abuse battery in violation of La. R.S. 14:35.3. On March 18, 2019, a bench trial was held, and the trial judge found defendant guilty as charged. On that same date, the trial judge sentenced defendant to three and one-half months in parish prison with the first forty-eight hours to be served without benefit of parole, probation, or suspension of sentence, and he also imposed a five hundred dollar fine. Thereafter, defendant filed a "Motion and Incorporated Memorandum for New Trial Pursuant to LCCP art. 851, and Alternatively to Reconsider or Amend Sentence per LCCP art. 881, and for Post Conviction Bail per LCCP art. 312," which was denied after a hearing on June 10, 2019.

On July 3, 2019, defendant filed a motion for appeal that was granted. However, on January 22, 2020, this Court dismissed defendant's appeal for lack of jurisdiction, noting that defendant's misdemeanor conviction was not an appealable judgment. This Court reserved defendant's right to file an application for supervisory writs, and defendant thereafter filed the instant writ application.

## FACTS

At trial, Deputy Umkantbhai Patel of the Jefferson Parish Sheriff's Office testified that on May 22, 2017, at 8:36 p.m., he was dispatched to 515 Avenue K in Marrero in reference to a "disturbance" call. When Deputy Patel arrived a few

---

[1] We also deny defendant's request for oral argument.

minutes later, he met with the victim, Melanie Hidalgo, who was crying, afraid, and "kind of shaken up a little bit." Deputy Patel noted that the victim had a small laceration on the left side of her forehead. He took photographs of the injury, which were admitted into evidence at trial without objection. According to Deputy Patel, the victim told him that she was at home and, when her husband subsequently came home, she told him she was filing for divorce. The victim told Deputy Patel that, at first, defendant was calm but then started pacing and getting agitated. According to the victim, defendant then grabbed her and pushed her up against the wall, causing her to sustain the laceration to the left side of her forehead. The victim told him the incident occurred between 7:00 and 8:30 p.m. Deputy Patel placed a call to EMS to respond to the location.

Deputy Patel testified that the victim identified Michael Hidalgo, defendant, by name as the perpetrator. He also asserted that the victim told him that defendant had left the residence, but she did not know where he went. Deputy Patel advised the victim to obtain a temporary restraining order in reference to this incident.

Melanie Bourgeois Hidalgo testified that she and defendant got married in 1994, and she filed for divorce in April of 2017. They were formally divorced at the time of trial, but they had not yet completed the property settlement. She asserted that she wanted to "get out" of her marriage in early 2017, because defendant was drinking excessively, staying out until late hours of the night, and being very angry and argumentative. In April of 2017, she and defendant lived at 515 Avenue K in Marrero, but they had not been sleeping in the same bedroom for four months.

Ms. Hidalgo stated that on May 22, 2017, defendant was served with divorce papers at his place of employment. That evening, when she went home at approximately 6:30 p.m., Ms. Hidalgo was surprised to see defendant's truck in the

driveway. She went inside, took care of her dog on the second level of the home, and then went upstairs to the third level where the bedrooms were located. Ms. Hidalgo asserted that she went into the master bedroom and defendant was there, lounging across the bed with papers in his hand. Ms. Hidalgo testified that defendant first told her that he had been served with divorce papers. He then told her that he had received his B.P. settlement papers "because he had made some errors" on them and that he needed her to sign the final corrected copies. Ms. Hidalgo did not sign them because her divorce attorney advised her not to sign anything without him viewing it. When she refused to sign the papers, defendant became agitated. When Ms. Hidalgo turned away to leave the room, she heard him move behind her. She explained that she was then "slammed" into the door frame in the master suite and that defendant had come up behind her and "rammed" into her. Ms. Hidalgo stated that she sustained injuries to her head during the incident. She testified that she was "dazed," had the "breath knocked out of her," and was "on the ground."

Ms. Hidalgo testified that while she was on the floor, defendant stepped over her and said, "B**ch, I didn't even put my hands on you." Ms. Hidalgo also testified that she could see defendant going down the stairs to the second level where he kicked her dog. Defendant then left the house. Ms. Hidalgo stated that she was in fear and in a lot of pain, which caused her to get "physically sick." After she went downstairs to check on her dog, Ms. Hidalgo called the police. The 9-1-1 call was played at trial. Ms. Hidalgo testified that the police arrived approximately ten minutes after she made the call. When the police arrived, she told them what had transpired and informed them that defendant was probably at "Rum Runners" where he went on a daily basis. Ms. Hidalgo testified that EMS also came to her house on the night of the incident.

Ms. Hidalgo testified that her entire body was hurting on the evening of the incident and the following days. She stated that a few days after the incident, she noticed a difference in her left breast implant and an "obvious change" and discomfort in that area. She explained that she was a cancer survivor and that she had a bilateral mastectomy in the past. After the May 22, 2017 incident, Ms. Hidalgo had an MRI, which showed contour deformities in her chest. She testified that as a result of the incident on May 22, 2017, she had to have a revision surgery on her breast implants.[2]

Ms. Hidalgo testified that prior to May 22, 2017, defendant had been violent with her. She recalled that in 1996 or 1997, defendant came home highly intoxicated. She testified that she confronted defendant in the bedroom after he came home, after which he became "quite agitated" and hit her with a decorative bed pillow with "all his might," knocking her against the closet door. She further testified that defendant then punched her in the shoulder against the closet door. Ms. Hidalgo noted that throughout their marriage, defendant joked about that incident, saying that he got arrested because he hit her with a feather.

Ms. Hidalgo recalled that the day after the May 22, 2017 incident, she filed for a civil protective order, which was granted by the Domestic Commissioner. She was also granted use of the family home, and defendant was ordered to reimburse her for expenses and "anything the insurance company didn't pay" with respect to her injuries caused by the assault. She stated that defendant has made some payments toward her medical expenses.

Following Ms. Hidalgo's testimony, the State introduced into evidence her medical records from West Jefferson Medical Center and Touro Infirmary, and they were admitted without objection. The State then rested its case.

---

[2]Ms. Hidalgo admitted that she had two revision surgeries prior to this incident.

Defendant testified that on May 22, 2017, at approximately 5:00 p.m., he was home when Ms. Hidalgo arrived. He stated that he left at approximately 5:15 p.m. and went to his son's house, arriving at approximately 5:30 p.m. Afterwards, he went to a bar called "Rum Runners" with his current girlfriend, Leslie Wagner, and his son. He got to the bar at approximately 5:45 p.m., and Ms. Wagner arrived at approximately 6:00 p.m. Defendant testified that he stayed at the bar until approximately 11:00 p.m., but his son left at approximately 8:00 p.m.

Defendant testified that he was served with divorce papers at work on May 22, 2017, but he did not have an argument with Ms. Hidalgo about the divorce papers or anything else that day. He also stated that he did not show his wife any B.P. papers to sign on May 22, 2017. Rather, she signed them several days prior to this incident. Defendant further testified that he did not touch his wife. Defendant testified that he had no recollection of an incident on May 22, 2017. He testified that it could not have happened because he was not there.

With respect to the prior incident in 1996 or 1997, defendant explained that he came home and was very drunk. He stated that Ms. Hidalgo was "raising hell" at him for drinking. Defendant asserted that she argued with him in the "front room," not in the bedroom as she claimed. He admitted that he threw a pillow from the sofa at her and it hit her, but she was not injured. Defendant stated that he was not trying to injure her and that it did not make her lose her balance.

Leslie Wagner testified that she has known defendant since before May 22, 2017, but she was not his girlfriend at the time of the alleged incident. She testified that in the past they would frequent "Rum Runners," a local bar, and that they went there on May 22, 2017. Ms. Wagner stated that she first saw defendant that day between 5:30 and 6:00 p.m., and his son joined them later. She asserted that they left the bar at approximately 9:30 or 10:00 p.m. She testified that it would not have been possible for defendant to physically assault Ms. Hidalgo in

their home between 7:50 and 8:00 p.m. because defendant was with her the entire time.  Ms. Wagner recalled defendant telling her that he got divorce papers and was a "little upset," but he said he was expecting it.  Ms. Wagner admitted that she was interested in the outcome of this trial because it would relieve stress for defendant who had been dealing with this issue for two years.

**DISCUSSION**

In this writ application, relator raises issues pertaining to the sufficiency of the evidence, the denial of his motion for new trial, and his sentence.

*Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to support his conviction.  He contends that the trial court erred in ruling that he committed a battery, when his alibi eyewitness, Leslie Wagner, testified that he was with her at all material times.  He asserts that Ms. Wagner was not impeached "in any way, shape or form."  Defendant contends that Ms. Wagner's testimony created reasonable doubt in the State's case, and thus, he should have been acquitted.  Defendant also argues that the trial court erred in accepting the testimony of the alleged victim both at the conclusion of trial and at the motion for new trial, because she gave inconsistent versions of facts to law enforcement and the B.P. documents were signed and dated a week earlier than she claimed in her testimony.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).  An appellate court's function is not to re-determine the defendant's guilt or innocence based on its

appreciation of the facts and credibility of the witnesses. *State v. Cole*, 15-358 (La. App. 5 Cir. 12/23/15), 182 So.3d 1192, *writ denied*, 16-179 (La. 2/10/17), 215 So.3d 700. When there is conflicting testimony about factual matters, the resolution of which depends on a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. *Id.*

Defendant was convicted of domestic abuse battery in violation of La. R.S. 14:35.3, which is defined as "the intentional use of force or violence committed by one household member or family member upon the person of another household member or family member." La. R.S. 14:35.3(A).

Criminal intent may be specific or general. La. R.S. 14:10. The statute in question, La. R.S. 14:35.3, does not state the level of intent to be proven. In the absence of qualifying provisions, the terms "intent" and "intentional" refer to "general criminal intent." La. R.S. 14:11.

In *State v. Gatewood*, 12-281 (La. App. 5 Cir. 10/30/12), 103 So.3d 627, 631-632, the defendant was convicted of domestic abuse battery, third offense. In that case, the female victim testified that during an argument, the defendant hit her in the mouth, which split her lip. The bartender, who saw the victim within thirty minutes of the incident, testified that the victim's lip was "busted" and bleeding. The officer who arrived at the scene also testified that she had a swollen lip and that the victim reported that she had been in an altercation with her boyfriend. This Court found that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to prove that the defendant intentionally used force on the victim, who was a current or former member of his household. *Id.* at 631-32.

In the instant case, the State presented sufficient evidence at trial to show that defendant committed domestic abuse battery. Ms. Hidalgo testified that on May 22, 2017, defendant became agitated when she refused to sign the B.P.

settlement documents he presented to her. She indicated that when she turned away to leave the room, defendant "slammed" her into the door frame. She stated that she was "dazed," "had the breath knocked out of her," and was "on the ground." Ms. Hidalgo testified that she sustained injuries to her head as a result of the incident. She also testified that her entire body was hurting that evening and the following day, and that she had to have a revision surgery on her breast implants as a result of this incident. The victim's medical records, which were admitted into evidence, support Ms. Hidalgo's testimony regarding her injuries.

Deputy Patel testified that he was dispatched to the scene at 8:36 p.m. When he arrived, he met with Ms. Hidalgo who was crying and afraid. He saw that she had a small laceration on the left side of her forehead, and he took photographs of the laceration, which were admitted into evidence. Deputy Patel stated that the victim explained to him that she told defendant she was filing for divorce, after which he became agitated, grabbed her, and pushed her against the wall. Deputy Patel recalled the victim telling him the incident occurred between 7:00 and 8:30 p.m.

In his defense, defendant testified that on May 22, 2017, at approximately 5:00 p.m., he was home when Ms. Hidalgo arrived. He explained that he did not show his wife any B.P. papers to sign as that had occurred several days prior. He acknowledged that he was served with divorce papers that day, but stated that they did not have an argument about that or anything else that day and he did not touch his wife. He testified that the incident did not occur because he was not there. Defendant stated that he left the house at approximately 5:15 p.m. and spent the evening with Ms. Wagner and his son at a bar. Defendant admitted to a prior incident in 1996 or 1997, when he hit Ms. Hidalgo with a pillow, but he denied that she was injured during that incident.

Ms. Wagner, defendant's girlfriend, testified that she first saw defendant on May 22, 2017, between 5:30 and 6:00 p.m. at the bar and that they left the bar at approximately 9:30 or 10:00 p.m. She stated that it would have been impossible for defendant to physically assault Ms. Hidalgo between 7:50 and 8:00 p.m. because he was with her at the bar the entire time.

The trial judge heard the testimony and obviously found the State's witnesses to be more credible than the defense witnesses. The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056.

Considering the testimony and evidence presented at trial, a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support the conviction. Accordingly, defendant's argument regarding the sufficiency of the evidence is without merit.

*Motion for New Trial*

Defendant argues that the trial judge erred by denying his motion for new trial, in which he argued that: 1) the verdict was contrary to the law and evidence, 2) there was newly discovered evidence, and 3) the interest of justice would be served by granting him a new trial. In his motion, defendant noted that Ms. Hidalgo testified at trial that an argument ensued when she refused to sign B.P. settlement documents, but he claimed that this was the first time that B.P. documents were ever discussed in connection with this incident. Defendant stated that he did not have a copy of the B.P. documents during trial to prove that Ms. Hidalgo had previously signed them, because he was surprised and unprepared for this issue. In support of his motion for new trial, defendant attached a copy of B.P. settlement documents which indicate they were signed by Ms. Hidalgo on May 11,

2017 and May 13, 2017, over one week before May 22, 2017. He also submitted an affidavit and one from his attorney.

At the hearing on defendant's motion, Roland Ditta testified for the State that he was currently representing Ms. Hidalgo in her divorce and that he represented her in May of 2017. He further testified that on May 23, 2017, she came to his office and they prepared a petition for protection from abuse because of the incident with defendant the night before. Mr. Ditta recalled that Ms. Hidalgo showed him some B.P. settlement documents that needed to be signed. She signed them in front of him, and he took possession of them and mailed them himself on May 23, 2017.

Ms. Hidalgo testified at the hearing and admitted that she had signed some B.P. settlement papers prior to May 22, 2017. However, she explained that there were errors in the initial claim, so the company sent corrected copies at least twice. She stated that on May 23, 2017, in front of Mr. Ditta, she signed the papers that were presented to her on May 22, 2017.

Following the testimony, defense counsel noted that Mr. Ditta did not have proof that he mailed the B.P. documents. He argued that it was not credible that Mr. Ditta would have mailed those papers without a letter of transmittal since all of Mr. Ditta's other mailings had transmittal letters. He noted that Ms. Hidalgo signed the documents with the May 11 and May 13 dates, and that she did not submit any documents with the date of May 22, 2017. The prosecutor responded that the evidence provided by defense counsel was not new or material which would be required for a new trial. She noted that defendant was the claimant on the B.P. settlement papers, so he knew of their existence prior to trial. The prosecutor also contended that regardless, that information was not material as to whether defendant physically abused Ms. Hidalgo.

After considering the testimony, evidence, and arguments of counsel, the trial judge denied the motion for new trial. He stated that the evidence presented was not "newly discovered evidence" and that the testimony of the victim and defendant were the deciding factors in his decision to find defendant guilty of domestic abuse battery.

Defendant's motion for new trial was based on La. C.Cr.P. art. 851(B)(1), (3), and (5), which provide as follows:

> B. The court, on motion of the defendant, shall grant a new trial whenever any of the following occur:
>
> (1) The verdict is contrary to the law and the evidence.
>
> ****
>
> (3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
>
> ****
>
> (5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

Under La. C.Cr.P. art. 851(B)(1), the trial court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence. However, considering our finding that the evidence was sufficient to support defendant's conviction, we find that the trial court did not abuse its discretion by denying his motion for new trial on this ground.

We now turn to defendant's claim that he is entitled to a new trial based on newly discovered evidence. La. C.Cr.P. art. 854 provides, in pertinent part, as follows:

> A motion for a new trial based on ground (3) of Article 851 shall contain allegations of fact, sworn to by the defendant or his counsel, showing:

1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;

2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;

3) The facts which the witnesses or evidence will establish; and

4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.

Additionally, the jurisprudence imposes the following four requirements for a motion for new trial based on new evidence: 1) the evidence must have been discovered since the trial; 2) failure to learn of the evidence at the time of trial must not be due to defendant's lack of diligence; 3) it must be material to the issues at the trial; and 4) it must be of such a nature that it would probably produce an acquittal in the event of a retrial. *State v. Richoux*, 11-1112 (La. App. 5 Cir. 9/11/12), 101 So.3d 483, 489, *writ denied*, 12-2215 (La. 4/1/13), 110 So.3d 139. The trial court's determination as to whether these requisites are met is entitled to great weight, and its denial of a new trial will not be disturbed on appeal absent a clear abuse of that discretion. *Id*.; *State v. Do*, 13-290 (La. App. 5 Cir. 11/19/13), 130 So.3d 377, 388, *writ denied*, 13-2907 (La. 6/20/14), 141 So.3d 285.

In the present case, the B.P. documents that defendant attached to his motion for new trial were not newly discovered evidence. Defendant submitted a copy of those papers to show that they had been signed prior to the incident in order to support his argument that Ms. Hidalgo lied when she said that he wanted her to sign them on May 22, 2017. However, Mr. Ditta testified at the hearing on the motion for new trial that on May 23, 2017, Ms. Hidalgo came to his office and signed some B.P. settlement documents in front of him. Mr. Ditta testified that he took them and mailed the documents himself on May 23, 2017. Also, Ms. Hidalgo testified that although she signed some B.P. documents prior to May 22, 2017, the company sent corrected copies at least two times. She reiterated that on May 23,

2017, in front of Mr. Ditta, she signed the B.P. papers that were presented to her on May 22, 2017.

Considering the testimony and evidence presented, we find that the trial judge did not abuse his discretion by denying defendant's motion for new trial based on newly discovered evidence.

Finally, defendant claims that he is entitled to a new trial based on the interests of justice, as set forth in La. C.Cr.P. art. 851(B)(5). The grant or denial of a motion for new trial pursuant to La. C.Cr.P. art. 851(B)(5) should not be disturbed on review unless the trial court abused its great discretion. *State v. Guillory*, 10-1231 (La. 10/08/10), 45 So.3d 612, 615. Here, we find no abuse of discretion in denying the motion for new trial on this ground.

Having found no error in the trial court's denial of defendant's motion for new trial, we now consider his alternative argument that his sentence should be reconsidered or amended.

*Defendant's Sentence*

In this writ application, defendant also challenges his sentence, arguing that it is excessive. He contends that even if he were guilty, which he denies, incarceration is a "draconian" sentence which should be reversed. Further, he argues that even if incarceration is an appropriate sentence in this case, which he denies, failure to suspend all or part of the incarceration is a "draconian" sentence which should be reversed.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. *Id.* A sentence is grossly

disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622.

A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. *State v. Dorsey*, 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *Id.*

Defendant was convicted of domestic abuse battery in violation of La. R.S. 14:35.3. La. R.S. 14:35.3 provides for sentencing on a first conviction as follows:

> C. On a first conviction, notwithstanding any other provision of law to the contrary, the offender shall be fined not less than three hundred dollars nor more than one thousand dollars and shall be imprisoned for not less than thirty days nor more than six months. At least forty-eight hours of the sentence imposed shall be served without benefit of parole, probation, or suspension of sentence. Imposition or execution of the remainder of the sentence shall not be suspended unless either of the following occurs:
>
> (1) The offender is placed on probation with a minimum condition that he serve four days in jail and complete a court-monitored domestic abuse intervention program, and the offender shall not own or possess a firearm throughout the entirety of the sentence.
>
> (2) The offender is placed on probation with a minimum condition that he perform eight, eight-hour days of court-approved community service activities and complete a court-monitored domestic abuse intervention program, and the offender shall not own or possess a firearm throughout the entirety of the sentence.

In this case, the trial judge sentenced defendant to three and one-half months in parish prison with the first forty-eight hours to be served without benefit of parole, probation, or suspension of sentence, and he also imposed a five hundred dollar fine. This sentence is within the applicable sentencing range. At the sentencing hearing, the trial judge indicated that he based the sentence on the

seriousness of the offense and the fact that the victim had to sustain some follow-up treatment.

In defendant's motion to reconsider or amend his sentence, he sought to have his sentence amended under La. C.Cr.P. art. 881(B)(1) and/or reconsidered under La. C.Cr.P. art. 881.1, "to effect a change in his sentence whereby all of said sentence is suspended beyond the first 48 hours." La. C.Cr.P. art. 881(B)(1) provides that after commencement of execution of sentence in a misdemeanor case, the sentencing judge may reduce the sentence or may amend the sentence to place the defendant on supervised probation. La. C.Cr.P. art. 881.1(A)(2) provides that in misdemeanor cases, the defendant may file a motion to reconsider sentence at any time following commencement or execution of such sentence. It further provides that the court may grant the motion and amend the sentence, even after completion of execution of the sentence, to impose a lesser sentence which could lawfully have been imposed.

In the instant case, the evidence at trial established that defendant pushed his wife into a door frame and caused injuries to her head and to her breast implants, which required surgery. The evidence showed that defendant had physically attacked his wife on a previous occasion. When the trial judge denied the motion to amend or reconsider the sentence, he stated that he believed any lesser sentence would deprecate the seriousness of this offense in which defendant struck his wife and caused her to fall, hit her head, and have other injuries. The sentence imposed is mid-range, and we see no basis for disturbing it, as it is not excessive.

Accordingly, we find that the trial court did not abuse its discretion in sentencing defendant to three and one-half months in parish prison and a five hundred dollar fine.

**DECREE**

Considering the testimony, evidence, and applicable law, we affirm

defendant's conviction and sentence.  Accordingly, this writ application is denied.

**WRIT DENIED; CONVICTION AND SENTENCE AFFIRMED.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**MARCH 18, 2020** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 20-KP-89

### E-NOTIFIED
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DONALD A. ROWAN, JR. (DISTRICT JUDGE)
THOMAS J. BUTLER (RESPONDENT)

### MAILED
RICHARD H. BARKER, IV (ATTORNEY)
601 POYDRAS STREET
SUITE 2345
NEW ORLEANS, LA 70130

HONORABLE PAUL D. CONNICK, JR.
(ATTORNEY)
TWENTY-FOURTH JUDICIAL DISTRICT
200 DERBIGNY STREET
GRETNA, LA 70053