LANARD LAVIGNE

VERSUS

STATE OF LOUISIANA

NO. 24-KH-403

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Linda Wiseman
First Deputy, Clerk of Court

January 16, 2025

Linda Wiseman
First Deputy Clerk

**IN RE** LANARD LAVIGNE

---

**APPLYING FOR** SUPERVISORY WRIT FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT, PARISH OF JEFFERSON, STATE OF LOUISIANA, DIRECTED TO THE HONORABLE JUNE B. DARENSBURG, DIVISION "C", NUMBER 18-6525

---

Panel composed of Judges Fredericka Homberg Wicker,
Stephen J. Windhorst, and John J. Molaison, Jr.

**WRIT DENIED**

Relator, Lanard Lavigne ("Lavigne") seeks supervisory review of the trial court's judgment denying his first Application for Post-Conviction Relief ("APCR"), following this court's May 24, 2023 opinion affirming his murder conviction and the Louisiana Supreme Court's October 10, 2023 denial of his application for supervisory review thereafter. On October 21, 2021 Relator was convicted and later sentenced for the second degree murder of Kerwin Connor, in violation of La. R.S. 14:30.1.[1] He has asserted six assignments of error. On the showing made and for the reasons set forth below, we deny Lavigne's application for supervisory writs.

---

[1] Lavigne also pled guilty to one count of obstruction of justice (La. R.S. 14:30.1) by tampering with evidence in a murder investigation by intentionally removing the handgun he used to commit the murder of Conner from the crime scene. He was also charged with and convicted by the jury of aggravated criminal damage to property (La. R.S. 14:55) as a result damage caused to residences in the area of the shooting by bullets fired from his gun.

24-KH-403

## FACTS[2] AND PROCEDURAL BACKGROUND

By way of summary, the facts leading to Lavigne's conviction are that: On March 14, 2018, Levigne shot Kerwin Connor a/k/a "Puddy" ("Connor") three times, while Conner was outside of his residence in the 300 block of Clemson Place in Kenner, Louisiana. Connor died from his injuries.

Lavigne and his girlfriend, Darriyell Beasley ("Beasley") lived across from Connor, a notorious heroin addict and drug dealer, at 110 Clemson Place. Prior to the shooting, Beasley, who was on her way to the store, passed by Connor and another man, who were in a vacant lot on the side of the apartment complex, working on a truck. Connor made insulting comments to Beasley as she passed. Upon leaving the store, Beasley met up with Lavigne and they walked home together. On their way home, Beasley told Lavigne about the comments made to her by Connor and the other man.

When they passed by Connor, who was still in the vacant lot, but inside the truck, Connor initiated a verbal altercation with Lavigne, which ended with Connor telling them he was going to his apartment to get something[3] and Lavigne and Beasley proceeding into their apartment. Connor ran upstairs to his apartment, retrieved a handgun, went to the front of the apartment building where Beasley and Lavigne lived, and started pacing back and forth in the street.

Shortly after Connor appeared in front of their apartment building, Beasley and Lavigne left their apartment to walk their dog in a nearby park. Not knowing what they were going to walk out to, Lavigne armed himself with a semi-automatic

---

[2] The facts relating to the incident in which Lavigne shot and killed Connor are set forth at length in this Court's opinion on Lavigne's direct appeal. *State v. Lavigne,* 22-282, (La. App. 5 Cir. 5/24/23), 365 So.3d 919, 927-37. The sufficiency of the evidence to convict Lavigne is discussed in detail at 22-282, 365 So.3d at 938-48. The evidence was found by this Court to be sufficient to convict Lavigne.
[3] Beasley thought he said he was going to get his shoes.

handgun. When they exited their apartment, Connor yelled to Lavigne that he was going to make him use his gun. Connor pointed his own gun, a revolver, at Beasley and Lavigne. Lavigne pulled his gun out of his backpack and started firing at Connor. Beasley ran back into their apartment. Connor began running between cars and started to make his way back to his apartment. While continuing to fire his gun, Lavigne chased Connor who was dodging Lavigne's shots. The chase ended when Connor (with his friend, known only to Connor's fiance as "Kevin")[4] ran up to his apartment where he collapsed. Three of Lavigne's shots hit Connor. Two of the shots severed Connor's femoral arteries in both legs.

Connor's fiancé called 911 and fled from the apartment with their nine year old daughter. They observed a revolver on the steps when they exited their apartment, but the revolver was never recovered by police.[5] After the shooting Lavigne fled to Houma, where he stayed with relatives for some seven months before being found there and arrested.

Lavigne was charged by a Jefferson Parish Grand Jury in a three count indictment with second degree murder (Count 1), obstruction of justice (Count 2) and criminal damage to property (Count 3). After pleading guilty to Count 2, Lavigne's trial on Counts 1 and 3 commenced on October 18, 2021. Lavigne claimed that he shot and killed Connor in self-defense and/or in the heat of passion. On October 21, 2021, the jury convicted Lavigne on Counts 1 and 3. After the trial, Lavigne filed a Motion for New Trial and a Motion for Post-Judgment Verdict of Acquittal, which were denied by the trial court on December 6, 2021. Thereafter, the trial court sentenced Lavigne to serve life in prison at hard labor, without benefit of probation, parole or suspension of sentence as to Count 1; to forty years

---

[4] "Kevin" was later identified as Kevin Brown ("Brown") and another man who was with "Kevin" and the victim was identified as Bernett Tibbitt ("Tibbitt"). Neither were called as witnesses at trial, nor were any search warrants ever served on the two men, even though investigating detectives believed that they had removed Connor's gun from the scene and had disposed of it.

[5] See n. 4 above.

imprisonment at hard labor as to Count 2, and to fifteen years imprisonment at hard labor as to Count 3, with the sentences to run concurrently.

Lavigne timely appealed his convictions and sentences to this Court. This court affirmed Lavigne's convictions, but vacated the matter for resentencing, finding the sentences to be indeterminate as the trial court failed to specify whether the sentences were to run concurrently with specific sentences imposed or concurrently with any other sentences that Lavigne may have been serving at the time.[6] We further found that the trial court had not properly advised Lavigne of the prescriptive period applicable to his right to file an application for post-conviction relief, and instructed the trial court to so advise him at the resentencing hearing.[7]

On July 26, 2023, Lavigne was resentenced in accordance with this Court's opinion and instructions. At Lavigne's resentencing hearing, Lavigne represented to the trial court that he had not received a copy of this Court's opinion on his direct appeal. The trial court stated, however, that Notice of Judgment and the Judgment had been served on Lavigne's appellate counsel on May 24, 2023. The trial court provided Lavigne with a copy of this Court's opinion at his resentencing hearing. Lavigne then filed an application for supervisory writs to the Louisiana Supreme Court, which was not considered because it was untimely under Louisiana Supreme Court Rule X, § 5(a).[8]

On March 7, 2024, Lavigne filed his first APCR in the trial court. Therein, Lavigne raised the following issues: (1) that his failure to be served with this Court's opinion on his direct appeal deprived him of the right to seek further review of this convictions and sentences by timely filing a timely application for supervisory writs

---

[6] 22-282, 365 So.3d at 962.

[7] *Id,* at p. 63,365 So.3d at 962-63.

[8] *State v. Lavigne,* 23-1119 (La. 10/10/23), 370 So.3d 1086, *reconsideration denied,* 23-1119 (La. 1/10/24), 375 So.3d 1086. Rule X, § 5(a) provides that an application for supervisory writs must be filed within 30 days of the mailing of the Notice of Judgment by the Clerk of the appeals court or within 30 days of the mailing of the notice of the notice of denial of any application for rehearing or judgment on rehearing, if applicable. Rule X, § 5(a) further provides that no extension of the deadlines will be granted.

to the Louisiana Supreme Court; (2) prosecutorial misconduct in conjunction with *vior dire,* opening statement and closing arguments, and in failing to correct inaccurate testimony presented at trial in violation of *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); (3) trial court errors, including errors committed in *voir dire* and in connection with the exercise of juror challenges; failing to correct the misconduct of the prosecutor; instructing jurors as to the penalty for second degree murder and re-polling the jury; (4) ineffective assistance of trial counsel in failing to interpose objections and in suggesting during *voir dire* that life in prison is an appropriate sentence for second degree murder, and ineffective assistance of appellate counsel in failing to adequately argue on appeal the insufficiency of the evidence to support a conviction for second degree murder; and (5) that the cumulative effect of all of the errors alleged in the APCR warranted relief.

Lavigne filed a motion for an evidentiary hearing on his APCR, which was denied by the trial court. The State filed a response to Lavigne's APCR, contending that most if not all of Lavigne's claims were procedurally barred under La. C.Cr.P. art. 930.4(B)[9] and that, in any event, his claims lacked merit.

The trial court denied Lavigne's APCR by Order issued on July 26, 2024, finding that:

> The petitioner received a fair trial by jury with reliable results. Furthermore, he has had careful legal review of the proceedings against him on direct appeal. The record establishes valid convictions and sentences authorized by law. The petitioner's post-conviction claims are procedurally barred and unwarranted. On all claims, the petitioner has utterly failed to meet his heavy burden of proof under La. C.Cr.P. art. 930.2.[10]

---

[9] La. C.Cr.P. art. 930.4(B) provides that "[i]f the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.

[10] Application, p. 325.

5

Lavigne timely filed a Notice of Intent to seek supervisory writs to this Court. His application for supervisory writs (the "Application") was filed on August 27, 2024. Lavigne's Application asserts as error the issues raised in his APCR plus an additional assignment of error based on the failure of the trial court to grant him an evidentiary hearing on his APCR.

## APPLICABLE LAW ON POST-CONVICTION RELIEF

La. C.Cr.P. art. 930.2 provides that the burden of proof in an application for post-conviction relief is on the petitioner. If the application is based on a "claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence," it shall not be considered unless required in the interest of justice. La. C.Cr.P. art. 930.4(A). Additionally, [i]f the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court shall deny relief." La. C.Cr.P. art. 930.4(B). Further, "[i]f the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court shall deny relief." La. C.Cr.P. art. 930.4(C).[11]

## DISCUSSION OF ASSIGNMENTS OF ERROR

### ASSIGNMENT OF ERROR NO. 6:
(Failure to Conduct a Hearing on Lavigne's APCR)

We will consider Lavigne's last assignment of error first. In his sixth assignment of error, Lavigne alleges that the district court erred in failing to grant him an evidentiary hearing on his APCR. We disagree. La. C.Cr.P. Article 929(A) provides that no hearing is required where the court determines that the factual and legal issues presented in the APCR can be resolved "based upon the application and answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or available to the court…."

---

[11] See also La. C.Cr.P. art. 841(A) which provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of the occurrence."

6

In *State v. Ball,* 2019-0164, pp. 10-11 (La. 11/24/20), 305 So.3d 90, 98, the Louisiana Supreme Court stated:

> It is well-established that the district court may dispose of an application for post-conviction relief without conducting an evidentiary hearing, even if the application states a claim on which relief could be granted, if the issues raised can be resolved on the application, answer, and supporting documents, including relevant transcripts, depositions, and other reliable documents submitted by either party or that are available to the court…[O]nly '[w]hen there is a factual issue of significance that is sharply contested' need the court hold a hearing.[12]

As discussed below, the issues presented by Lavigne in his APLC are issues that can be resolved without the need of a hearing, and this assignment of error is without merit.

### ASSIGNMENT OF ERROR NO. 1
### (Deprivation of full Appellate Review)

The first substantive error raised by Lavigne is that he was deprived of full appellate review in that he was prevented from timely applying to the Louisiana Supreme Court for supervisory writs following his direct appeal because he did not personally receive notice of this Court's disposition on his direct appeal. The record reflects that Lavigne's appellate counsel was electronically served with this Court's decision on May 24, 2023,[13] in compliance with Uniform Rules—Courts of Appeal, R. 2-16.4, which provides: "In every case, one copy of the opinion, when rendered, shall be transmitted by mail or electronic transmission to the trial judge, the clerk of the trial court, all appeal counsel of record, and all parties ***not*** represented by counsel." (Emphasis added). Lavigne was represented by counsel in conjunction with his appeal. Service on his said counsel was made and was proper. The Rule does not require that a party represented by counsel be personally served with the Notice of Judgment and Judgment.

---

[12] Citations and parentheses omitted.
[13] See Application, p. 91.

Nevertheless, Lavigne claims that he should have been *personally* notified of this Court's decision, which did not occur until July 26, 2023, at his resentencing hearing,[14] by which time, the thirty-day time period for seeking supervisory writs to the Louisiana Supreme Court had expired. Lavigne was provided by the district court with a copy of this Court's decision on his direct appeal at his resentencing hearing. Lavigne then filed a *pro se* application for supervisory writs in the Louisiana Supreme Court within thirty days of his resentencing hearing. The lack of personal notice was raised by Lavigne in his argument to the Louisiana Supreme Court that it should excuse the lack of timeliness of his application for supervisory writs. This issue was obviously considered and rejected by the Court when it denied Lavigne's writ application on October 10, 2023, stating, "Not timely filed. *See* Louisiana Supreme Court Rule X, § 5(a).[15] *State v. Lavigne,* 23-119 (La 10/10/23), 370 So.3d 1086, *reconsideration denied,* 23-1119 (La. 10/10/23, 375 So.3d 967.

Lavigne claims that he is entitled to seek relief in his APLC to file his out-of-time writ application under *State v. Counterman,* 475 So.2d 336 (La. 1975), which held that an APLC filed in the trial court is the appropriate procedural vehicle for a defendant who has failed to file a direct appeal to seek reinstatement of his right to appeal. Here, Relator has received judicial review by this Court of his conviction and sentence on direct appeal. In *Talley v. Maggio,* 451 So.2d 1358, 1361 (La. App. 4th Cir. 1984), the court held that "[t]here is no constitutional right to further review [after a direct appeal] by way of rehearing or writs."[16] *Counterman* does not support

---

[14] See Application, pp. 92-94 (excerpt of Lavigne's resentencing transcript).

[15] Louisiana Supreme Court Rule X, § 5(a) provides that after a direct appeal where no timely application for rehearing has been filed, an application seeking review by the high court "shall be made within thirty days of the mailing of the notice of the original judgment of the court of appeal," and that "[n]o extension of time therefor will be granted."

[16] See also *State v. Mourra,* 08-KH-748 (La. App. 5th Cir. 10/23/08)*, writ denied*, 08-2768 (La. 10/9/09), 19 So.3d 7, *State v. Spikes,* 20-130 (La. App. 1 Cir. 5/12/20), 2020 WL 2461517 ("[a] criminal defendant has no constitutional right to counsel to pursue discretionary state appeals or applications for review."); *Ross v. Moffitt,* 417 U.S. 600 (1974) (holding that a criminal defendant does not have a constitutional right to counsel to pursue discretionary appeals); and *Wainright v. Torna,* 455 U.S. 586 (1982) (Respondent's writ after direct appeal was dismissed as untimely and he filed a habeas corpus alleging the failure to timely file as ineffective assistance of counsel. Held: Respondent had no absolute right to discretionary review by the Florida Supreme Court; thus, counsel's assistance cannot have been ineffective.).

8

the defendant's right to seek out-of-time supervisory review from the Louisiana Supreme Court in an APLC, which review is completely discretionary with respect to non-capital defendants, such as Lavigne here.[17]

Even if this claim had merit, which it does not, the petitioner in an APCL has the burden of proof to show that the issues raised in his application affected his conviction and sentence. As stated by the district court, Lavigne made no showing that a timely writ application to the Louisiana Supreme Court would have been granted or that, if granted, his conviction would have been reversed.

## ASSIGNMENT OF ERROR NO. 2
### (Prosecutorial Misconduct)

Lavigne's claim of prosecutorial misconduct is comprised of a number of individual sub-claims relating to the conduct of the prosecution during jury selection, in opening statements, at trial, and in its closing argument. The district court denied all of Lavigne's claims of prosecutorial misconduct on the grounds that they were procedurally barred under La. C.Cr.P. arts. 841(A) and 930.4(B) because no objections were made at trial. Although we agree with the district court's analysis in this regard, we will nevertheless address Lavigne's sub-claims below.

(a) **Informing the Jury of the Mandatory Sentence for Second Degree Murder During *Voir Dire.***

In his second substantive claim raised in his APLC, Lavigne makes several claims of prosecutorial misconduct, including multiple improper references made during the prosecutor's *voir dire,* opening statement and closing argument relative to the mandatory sentence for second-degree murder. This claim is without merit. Lavigne's counsel failed to contemporaneously object to these comments by the prosecutor made during *voir dire,* opening statement, and/or closing arguments, and

_____

[17] See Article V, § 10 of the Louisiana Constitution of 1974 and LSA-C.Cr.P. 911.

9

this issue was not raised on appeal.[18] Accordingly, the district court correctly found that these claims could not be raised in Lavigne's APCL.

Moreover, the prosecutor's references to the mandatory sentence for second degree murder in *voir dire* were not improper as they were designed to enable the prosecution to identify potential jurors who would be unable to enter a guilty verdict knowing that the only sentence that could be imposed was life, without benefits of probation, parole or suspension of sentence. In *State v. Frey,* 568 So.2d 576, 577 (La. App. 4th Cir. 1990) the court held that the trial court was within its discretion in allowing the prosecution to challenge for cause all jurors who stated that they could not consider a verdict of guilty due to the mandatory life sentence that would be required if the defendant were convicted.[19] Citing *State v. Jackson,* 450 So.2d 621 (La. 1984), Lavigne asserts, however, that a mandatory sentence may only be discussed at trial if the defendant requests an instruction and then, only by the court in the jury instructions, given at the close of the evidence. He contends that because he never requested that the jury be informed of the mandatory sentence, or initiated discussion of the mandatory sentence during *voir dire,* the prosecutor's references to the mandatory sentence during *voir dire* were improper and require reversal. Lavigne misinterprets *Jackson.*

*Jackson* has no bearing on the scope of *voir dire.* La.C.Cr.P. 786 states, in pertinent part, that "[t]he court, the state and the defendant shall have the right to examine prospective jurors. The scope of the examination shall be within the discretion of the court." The Louisiana Supreme Court has held that the district court's rulings on the issues arising in connection with counsel's *voir dire*

---

[18] La. C.Cr.P. arts. 841(A), 930.4(B) and (C).

[19] Accord, *State v. Wright,* 618 So.2d 540 (La. App. 4th Cir. 1993); *State v. Ladell,* 52,847 (La. App. 2 Cir. 9/25/19), 280 So.2d 932. As discussed *infra* in conjunction with Lavigne's assignment of error related to trial court errors, the trial court, over defense objection, allowed two cause challenges of jurors who expressed that they would not be able to return a verdict of guilty to second degree murder knowing that the mandatory penalty was a life sentence.

10

examination "will not be disturbed on appeal in the absence of a clear abuse of discretion…[based] on a review of the record of the *voir dire* as a whole."[20]

If such references made by the prosecution in *voir dire* were not improper, then, they were also not improper in the prosecutor's opening statement and closing argument, as the jury had already been informed of the mandatory penalty in *voir dire*. Finally, even if improper, the prosecutor's references to the mandatory sentence upon conviction did not affect the outcome of the case, since Lavigne's counsel alluded to the mandatory sentence in *voir dire* and since the district court instructed the jury as to the mandatory sentence for second degree murder in the jury instructions. Accordingly, any such errors would be harmless.

**(b) Allegedly Improper Arguments made by the Prosecution in its Opening Statement and Closing Argument.**

Lavigne also argues that the prosecution improperly argued matters that were unsupported by the evidence in its opening statement and closing argument, including that: (1) Connor was shot execution-style at his front door (opening and closing); (2) Connor "bled-out" in his apartment (opening and closing); (3) Connor knew that Lavigne was armed after his initial confrontation with Lavigne (opening and closing); (4) Connor was not lying in wait for Lavigne and Beasley when they left their apartment to walk their dog (opening and closing); (5) Connor never fired his gun (opening and closing); (6) the fact that Connor's fatal wounds were to the front of his body prove second degree murder (closing); (7) Lavigne was not in imminent danger when Connor got back to his own apartment (closing); (8) the credibility of Brown and Tibbitt would have been called into question had they testified at trial (closing); and (9) Connor never pointed his gun at Lavigne and Beasley (closing). The district court correctly ruled that all of these claims were

---

[20] *State v. Hall,* 616 So.2d 664, 669 (La. 1993); La. C.Cr.P. 786.

procedurally barred as no contemporaneous objections to the statements of the prosecutors were raised at trial.

La. C.Cr.P. art. 766 provides that "[t]he opening statement of the state shall explain the nature of the charge, and set forth in general terms, the nature of the evidence by which the state expects to prove the charge." "[A]bsent bad faith on the part of the prosecutor or clear and substantial prejudice, the reference in the opening statement to evidence later ruled inadmissible or not produced is not [reversible error]."[21]

La. C.Cr.P. art. 774 provides that "[t]he [closing] argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case." It has been held that a prosecutor retains considerable latitude in making closing arguments[22] and is permitted to make statements during closing arguments drawn from a range of reasonable conclusions from the facts in evidence.[23] "Even if the prosecutor exceeds this latitude, a reviewing court will not review a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict."[24] Several cases that illustrate these points are discussed below.

In *Casey, supra,* the prosecutor, in his closing argument, referred to serial killers Wayne Williams and Ted Bundy and compared the defendant to them.[25] In *State v. Martin,* 539 So.2d 1235, 1240 (La. 1989), the prosecutor's closing argument referred to "smoke screen" tactics and the defense as "commie pinkos." In *Soler,*

---

[21] *State v. Horne,* 554 So.2d 820, 824 (La. App. 5 Cir. 1989), citing *State v. Bell,* 279 So.2d 164 (La. 1973); *State v. Green,* 343 So.2d 149 (1977).
[22] *State v. Casey,* 1999-0023 (La. 1/26/00), 775 So.2d 1022, 1036; *State v. Byrne,* 483 So.2d 564 (La. 1986), *cert. denied,* 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); *State v. Morris,* 404 So.2d 1186 (La. 1981); *State v. Soler,* 93-1042 (La. App. 5 Cir. 4/4/94), 636 So.2d 1069; *State v. Cole,* 15-358, p. 18 (La. App. 5 Cir. 12/23/15), 182 So.3d 1192, 1204.
[23] *Cole,*15-538, p. 18, 182 So.3d at 1204, citing, *State v. Breza,* 394 So.2d 254, 256 (La. 1981).
[24] *Id.*, citing *Frank,* 99-553, 957 So.2d at 741; *State v. Martin,* 93-0285 (La. 10/17/94), 645 So.2d 190, 200; see also, *Byrne,* 483 So.2d at 1357; *Soler,* 636 So.2d at 1082 ("Before reversing a jury verdict because of a prosecutor's closing remarks…the appellate court must be convinced the objectionable statements were so inflammatory or prejudicial that they influenced or contributed to the guilty verdict. (citations omitted)).
[25] 1999-0023, 775 So.2d at 1036.

*supra,* the prosecutor stated in her closing that the defendant was "no longer presumed innocent."[26] In *Cole,* the appellant argued that prosecutor's closing argument contained conclusory statements that were not supported by any evidence that was introduced at trial.[27] In *State v. Gray,* 351 So.2d 448, 460 (La. 1977), the prosecutor called the defendant an "animal" in his closing argument. In *State v. Bridgewater,* 2000-1529 (La. 1/15/02), 825 So.2d 877, 903, the prosecutor referred to the defendant in closing argument as a "cold-blooded killer" and as an "animal." In none of these cases was reversal granted based on a prosecutor's statements in opening statements or closing arguments.

The appellant in *State v. Taylor,* 93-2201 (La. 2/28/96), 669 So.2d 364, claimed that he was entitled to a reversal on the grounds of prosecutorial misconduct as a result of several allegedly improper statements made by the prosecutor during closing, including (1) invoking his personal status as a representative of the people of Louisiana; (2) making the "Angola lifestyle" argument; (3) stating that if the death penalty was imposed, the defendant, not the jury was to blame; (4) making statements relative to the defendant's remorse or lack thereof, comparing defendant to other murderers that he had prosecuted and comparing the murder weapon to others that he had observed, when no evidence relative to these issues had been introduced at trial; and (5) commenting on the credibility of the witnesses, including the defendant.[28] In denying the requested relief, the Louisiana Supreme Court observed that:

> While the complained of comments may constitute errors, they do not require reversal under the deferential 'firmly convinced' standard…Similar comments have been reviewed, condemned and found harmless by this Court.

---

[26] 636 So.2d at 1082.

[27] 15-538, 182 So.3d at 1203.

[28] The Louisiana Supreme Court has held that comments on the credibility of the witnesses is proper and within the scope of closing argument. *State v. Sayles,* 395 So.2d 695, 697 (La. 1981).

Here, the district court expressly instructed jury prior to the jury's deliberations that:

> The statements and arguments made by the lawyers are not evidence. In the opening statements, the lawyers were permitted to tell you the facts they expected to prove. In closing arguments, the lawyers were permitted to present for your consideration their contentions regarding what the evidence has [shown] and what conclusions they think may be drawn from the evidence. **The opening statements and the closing arguments are not to be considered as evidence.**[29]

Further, the jury heard all of the evidence presented at trial. On Lavigne's direct appeal, this Court reviewed all of that evidence in detail and found it to be sufficient to sustain his conviction. This Court has held that:

> In determining whether admission of the allegedly impermissible statements [made by the prosecutor during closing] constitutes reversible error, we are obliged to give credit to the good sense and fair-mindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence.[30]

Lavigne has not alleged and the record does not demonstrate any bad faith on the part of the prosecution during its opening statement; nor has he shown how the prosecutor's alleged improper opening statement clearly and substantially prejudiced his right to a fair trial. Nor are we "thoroughly convinced" that the prosecutor's remarks made in closing arguments, even if impermissible, influenced the jury and contributed to the verdict. In the case at hand, for all that appears, the prosecution's arguments to the jury were within the bounds of permissible argument. Accordingly, Lavigne has failed to carry his burden of proving that the complained of comments made by the prosecutor during opening statement and closing arguments require a reversal of his conviction.

### (c)    Failure of the Prosecutor to Correct False Testimony.

Lavigne argues that Detective Engler falsely testified at trial that he lacked probable cause to obtain a search warrant for areas under the control of Brown and

---

[29] Supp. R., *Lavigne* (direct appeal), 22-KA-282, p. 510. (Emphasis added).
[30] *Cole,* 15-358,182 So.3d at 1205. (Internal quotations and citations omitted).

Tibbett because he did not have direct evidence that Brown and/or Tibbitt removed Connor's gun from the crime scene. Lavigne asserts that the prosecutor's failure to correct Detective Engler's testimony was prosecutorial misconduct under *Napue, supra.* In *Napue,* the Supreme Court held that where a prosecutor allows a state witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness's testimony reasonably could have affected the jury's verdict, even if the testimony goes only to the credibility of the witness.[31]

As an initial matter, there was no contemporaneous objection to Detective Engler's testimony or any assertion at trial that Detective Engler's testimony was false or that the prosecutor knew the testimony was false and failed to correct it. Nor was this issue raised on appeal. Thus, this claim is procedurally barred under La.C.Cr.P. arts. 841(A) and 930.4(B) and (C).

Even if not procedurally barred, Lavigne has failed to demonstrate that Detective Engler testified falsely, and there is no evidence in the district court record that supports Lavinge's contention to the contrary. Detective Engler testified that Connor had been armed with a revolver on the day of the shooting but that the revolver was never recovered. Detective Engler further testified that he believed that Brown and/or Tibbett removed the gun from the scene; however, both men denied any knowledge of the gun when initially questioned. Detective Engler had no direct evidence, only his belief, that one or both of them had removed the gun. When Detective Engler attempted to follow up with Brown and Tibbett at a later date, he was unable to make contact with either of them. On those facts, Detective Engler testified that he did not believe there was sufficient probable cause to obtain search warrants for areas that may have been under the control of Brown and/or Tibbett.

---

[31] 360 U.S. at 269, 79 S.Ct. at 1177.

The prosecutor's statement in his closing argument that Brown and Tibbett were not called as witnesses because their testimony would have been challenged on the basis that they were friends of Conner does not discredit Detective Engler's testimony. Moreover, the prosecutor also stated in his closing argument that Brown and Tibbitt committed a felony by removing Connor's gun from the scene. This claim lacks merit.

**(d)    In his Closing Arguments, the Prosecutor Referred to Lavigne as a "Liar," and Discredited Beasley, his own Witness.**

Lavigne claims that the prosecutor committed egregious misconduct when, in his closing arguments, he referred to Lavigne as a "liar," and insinuated that Beasley's testimony was not credible. This claim is procedurally barred because no contemporaneous objections to these statements were made at trial, nor were these issues raised on appeal.[32] Further, as discussed above, a prosecutor retains considerable latitude in making closing arguments[33] and is permitted to make statements during closing arguments drawn from a range of reasonable conclusions from the facts in evidence.[34] "Even if the prosecutor exceeds this latitude, a reviewing court will not review a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict."[35] Comment on the credibility of witnesses is proper and within the scope of closing argument.[36]

The district court instructed the jury that it was to decide the case based solely on the evidence, which consisted of the testimony of the witnesses and exhibits introduced at trial, not the arguments of counsel, which were not evidence. The jury was also instructed that it was the sole judge of the credibility of the witnesses, including the defendant. Giving credit, as we must, to "the good sense and fair-

---

[32] La. C.Cr.P. arts. 841(A), 930(B) and (C).

[33] *Casey,* 1999-0023, 775 So.2d at 1036; *Byrne,* 483 So.2d at 571-71, *Morris,* 404 So.2d at 1191; *Soler,* 93-1042, 636 So.2d at 1082; *Cole,* 15-358, 182 So.3d at 1204.

[34] *Cole,* 15-538, 182 So.3d at 1204.

[35] *Id.*, citing *Frank,* 957 So.2d at 741; *Martin,* 645 So.2d at 200; see also, *Byrne,* 483 So.2d at 1357; *Soler,* 636 So.2d at 1082.

[36] *Sayles* 395 So.at 697.

mindedness of the jury that has seen the evidence and heard the argument, and has been instructed that the arguments of counsel are not evidence,"[37] and in light of the fact that, on Lavigne's direct appeal, we found ample evidence in the record to support his conviction, we are convinced that the statements of the prosecutor referring to Lavigne as a "liar," and Beasley as not credible did not influence the jury's verdict. Accordingly, even if Lavigne's claim of prosecutorial misconduct based on these statements made during closing argument were not procedurally barred, it is without merit.

**(e) In his Rebuttal Argument, the Prosecutor Allegedly Testified as an Expert on Heroin.**

Lavigne's trial counsel argued in his closing that the reason Connor -- a known heroin addict, who it was demonstrated at trial had taken heroin on the day of the shooting. had run to his apartment and armed himself after his initial altercation with Lavigne was attributable to his heroin use. In rebuttal, the prosecutor countered that Connor's heroin use was irrelevant and characterized heroin as "a narcotic drug that knocks people out." Lavigne characterizes this comment as inadmissible "expert testimony" by the prosecutor; however, no contemporaneous objection was made to this comment by the prosecutor and the claim is therefore procedurally barred under La. C.Cr.P. art. 930.4(B).

Even if not procedurally barred, however, Lavigne has not carried his burden of proving that the prosecutor's comment about the effects of heroin influenced the jury's verdict. The prosecutor was allowed to rebut defense counsel's closing argument about the possible effects of heroin on Connor on the day of the shooting.[38] Further, the jury was instructed that the arguments of counsel were not evidence and, after careful review of Lavigne's conviction on his direct appeal, we found the

---

[37] *Cole,* 15-358, p. 20, 182 So.3d at 1205. (Internal quotations and citations omitted).
[38] See La. C.Cr.P. art. 774.

evidence introduced at trial sufficient to sustain his conviction. This claim is without merit.

## ASSIGNMENT OF ERROR NO. 3
### (Failure of Trial Court to Correct Obvious Prosecutorial Misconduct)

Lavigne identifies two areas in which the district court erred in failing to correct allegedly obvious instances of prosecutorial misconduct: (1) it failed to correct the prosecutor's remarks during *voir dire* regarding the mandatory sentence; and (2) it sustained the prosecutor's challenges for cause of two prospective jurors who stated that they would be unable to render a verdict of guilty to second degree murder because of the mandatory life sentence. Lavigne argued these two issues in conjunction with his claims of prosecutorial misconduct discussed above and his arguments on them are largely a rehashing of those that he advanced in support of his claims of prosecutorial misconduct related to *voir dire* and the exercise of peremptory challenges. These claims may be referred to hereinafter as the "Jury Selection Claims."

Lavigne identifies two additional alleged district court errors, related to jury deliberations. First, he claims that the district court erred in instructing the jury as to the mandatory sentence for a conviction of second degree murder (the "Jury Instruction Claim"). Second, he alleges that the district court erred in repolling the jury after the jury had indicated that it had reached a unanimous verdict as to Count 1 (second degree murder) but polling showed that one juror had marked something other than second degree murder (the "Jury Polling Claim").

The district court rejected all of these claims, stating:

> As to the complaints regarding failure to correct prosecutorial misconduct, excusal for cause and an incorrect jury charge, there were no contemporaneous objections made during the trial[39] and no

---

[39] In fact, after trying to rehabilitate the two jurors who stated that they could not convict Lavigne of second degree murder knowing that he would receive a mandatory life sentence, defense counsel noted an objection when the district court allowed the prosecution to excuse the jurors for cause. This fact does not affect our ruling on this Application because the prosecution was within its rights to exclude the jurors on this basis, as discussed above.

18

arguments were made in connection with the petitioner's appeal. Review of these claims by the district and appellate court[s] has been bypassed, as the reviewing courts had no opportunity to consider these issues previously. As to the complaint asserting reversible error in polling, this issue was raised on direct appeal. After consideration, the Fifth Circuit Court of Appeal found no merit in the complaint….

The mandatory provisions of La. C.Cr.P. art. 930.4(B) and (C) prohibit consideration of defaulted issues in this post-conviction proceeding. The mandatory provision of La. C.Cr.P. art. 930.1(1) prohibits an unwarranted revisiting of an issue fully litigated on appeal.

Although the court finds these complaints procedurally barred, in addition, even a review of the merits of these complaints is unavailing as the court is unpersuaded that any reversible errors in fact occurred.[40]

We agree with the district court and find no basis for reversal on the ground of trial court error, as discussed below.

(a) **The Jury Selection Claim.**

Lavigne's claim that the prosecution should not have been permitted to inform potential jurors in *voir dire* of the mandatory sentence that would be imposed if Lavigne were convicted of second degree murder has been discussed above. We note, additionally, that *Jackson* does not impose a "gatekeeping" function on the district court to exclude references to mandatory sentencing during *voir dire* in the absence of a request by the defendant. As no contemporaneous objection to the prosecutor's remarks to potential jurors was made, Lavigne's claim for a reversal based on those remarks are procedurally barred under La. C.Cr.P. art. 930.4(B). The same is true of Lavigne's related claim that the district court erred in allowing the prosecution to so inform potential jurors during *voir dire*. The district court did not err in failing to sustain an objection that was not made.[41]

Further, as we discussed above, the prosecutor was entitled to discuss the mandatory sentence during *voir dire* in order to determine whether the mandatory sentence would affect the ability of any potential juror to find Lavigne guilty on the

---

[40] Application, p. 322.
[41] La. C.Cr.P. arts. 841(A) and 930.4(B) and (C).

19

charge of second degree murder. Two jurors expressed that they would not be able to convict Lavigne of second degree murder knowing that he would receive a mandatory life sentence. The prosecution challenged those jurors for cause. After objections by defense counsel, lengthy discussions among the prosecutors, defense counsel and the court, and attempts by defense counsel to rehabilitate the two jurors, the prosecution's challenges for cause were granted over defense counsel's objections. The granting of the prosecution's challenges for cause was not assigned as error in Lavigne's direct appeal and is procedurally barred under La. C.Cr.P. art. 930.4(C). Even if not procedurally barred, however, the district court did not abuse its discretion in allowing the prosecution to challenge these two jurors for cause.[42] La. C.Cr.P. art. 800(B) provides that "[t]he erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law." The state did not exercise any peremptory challenges in excess of those permitted under La. C.Cr.P. art. 799. This claim is without merit.

(b) **The Jury Charge Issue.**

Our review of the official appellate record reveals that Lavigne's counsel did not object, either during the charge conference or in open court when the jury was being charged, to the jury instruction given by the district court advising the jury of the mandatory sentence for a conviction of second degree murder and the claim is procedurally barred under La.C.Cr.P. arts. 841(A) and 930.4(B). Even if this claim were not procedurally barred, the district court did not commit reversible error when it instructed the jury a conviction of second degree murder carries a mandatory life sentence. Although Lavigne contends that, under the Louisiana Supreme Court's decision in *Jackson, supra,* the jury could be so instructed only if requested by him,

---

[42] *Frey, supra,* 568 So.2d at 577. See also, La. C.Cr.P. art. 800(B).

20

we have already explained that *Jackson,* does not *prohibit* the district court from advising or instructing the jury of a mandatory sentence absent a request from the defendant. In *State v. Brent,* 347 So.2d 1112, 1114 (La. 1977), the Louisiana Supreme Court stated that "[i]t is established in Louisiana law that a trial judge may, if he chooses to, instruct jurors on the applicable penalty in the event of conviction." Lavigne has not alleged that the district court's instruction relative to the mandatory sentence for second degree murder misstated the law. Accordingly, this claim lacks merit.

### (c) The Jury Polling Claim.

On direct appeal, Lavigne's appellate counsel assigned as error the giving of an impermissible *Allen* charge to the jury when, despite the jury's representation that they had reached a unanimous verdict on Count 1 (second degree murder), initial polling did not reflect a lawful verdict. In his Application, Lavigne asserts that the district court committed reversible error in repolling the jury because the court was bound to declare a mistrial at that point. Lavigne contends that his Jury Polling Claim is a different issue than that addressed by this Court in his direct appeal. We disagree.

The Jury Polling Claim was briefed on Lavigne's direct appeal and was carefully considered by us and discussed at length in our opinion where we held that:

> Upon review, we find that a mistrial was not required under the instant circumstances. Here, the jury initially indicated that it had reached a verdict in this matter. The judge noted that the verdict was incorrect, asked if the jurors wanted to be re-polled, and the jury indicated that they did, after which a proper unanimous verdict was returned. The record does not support a conclusion that the trial court's actions were coercive, but were merely an attempt to clarify the jury's signal that a proper verdict had been reached. Also, the record reflects that the judge inquired as to whether the jurors wanted to be re-polled, and all twelve agreed. This assignment of error is without merit.[43]

---

[43] *Lavigne,* 22-282, 365 So.2d at 953-54.

Lavigne's application to the Louisiana Supreme Court for supervisory writs from this Court's decision on his direct appeal was not considered, as discussed above, and our decision on the Jury Polling Claim became final. Under La. C.Cr.P. art. 930.4(A), "any claim for relief that was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered," unless required in the interest of justice. Lavigne's Jury Polling Claim was fully litigated in his direct appeal and he has not demonstrated any reasons why the interest of justice would require us to reconsider this issue now and we have found none. Accordingly, Lavigne's Jury Polling Claim is procedurally barred under La. C.Cr.P. art. 930.4(A) and lacks merit in any event.

### ASSIGNMENT OF ERROR NO. 4:
### (Ineffective Assistance of Trial and Appellate Counsel)

In this assignment of error, Lavigne claims that his trial counsel was ineffective because he: (1) failed to object to the prosecution's references to the mandatory life sentence for second degree murder during *voir dire*: (2) failed to properly object when the district court granted the state's cause challenges to two potential jurors who expressed reluctance to convict on the second degree murder charge because it carried a mandatory life sentence; (3) failed to object to improper remarks made by the prosecution in its opening statement, closing argument and rebuttal argument; (4) failed to object to Detective Engler's false testimony and the prosecution's failure to correct it; and (5) suggested to the jury in *voir dire* that a life sentence may be appropriate for second degree murder. Lavigne claims that his appellate counsel was ineffective because she did not adequately present his claim of insufficient evidence to this Court because she did not "point out that the prosecutor admitted in a pretrial hearing that the victim committed an overt act."[44]

---

[44] Application, pp. 243-44.

22

The district court found no merit in Lavigne's claims that his trial and appellate counsel were ineffective. As to Lavigne's claims of ineffective assistance of trial court counsel, the district court found that "[c]ontrary to his assertions, the record shows diligent advocacy and legal competence by trial counsel."[45] As to the performance of appellate counsel, the district court found that "appellate counsel made detailed sufficiency arguments in a careful and detailed manner…[t]he Court of Appeal delved into the facts and law in denying relief on this claim."[46]

The district court then concluded that:

> After consideration of the pleadings and the record, the court finds that defense counsel at the trial and appellate stages performed to a high legal standard and that the petitioner did not suffer legal prejudice from that representation. The conviction was based on strong evidence of guilt, as explained by the Court of Appeal. The results of the jury's verdict are reliable and fair. In addition, the petitioner has had careful appellate review, with no reversible errors found to have taken place.[47]

For the reasons stated below, we agree with the district court's evaluation of Lavigne's ineffective assistance claims and find that these claims are an attempt by Lavigne to "re-litigate [claims] that ha[ve] been previously disposed of, by couching [them] as…post-conviction ineffective assistance of counsel claim[s]," which we find unavailing.[48]

**(a)  Standard for Determining Claims of Ineffective Assistance of Counsel.**

The Sixth Amendment to the United States Constitution and Article 1, § 13 of the Louisiana Constitution guarantee a criminal defendant the right to effective assistance of counsel. The United States Supreme Court held in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, that a defendant asserting a claim of ineffective assistance of counsel must show:  (1) that counsel's performance was so deficient that counsel was not functioning as counsel guaranteed

---

[45] See Application, p. 324.
[46] *Id.,* pp. 323-24.
[47] *Id.,* p. 324.
[48] See *State v. Lee,* 14-2374 (La. 9/18/15), 818 So.3d 631, 638.

by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense to the extent that the defendant was deprived of a fair trial, or a trial whose result is reliable, and there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.

The appellate courts of this State adhere to the *Strickland* standard in evaluating claims of ineffective assistance of counsel.[49] In evaluating a claim of ineffective assistance of counsel, there is a strong presumption that counsel's performance is within the wide range of effective representation and that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.[50] Effective counsel does not mean errorless counsel, and the reviewing court should not evaluate counsel's performance based on hindsight but rather, should determine whether counsel was reasonably likely to render effective assistance.[51] In *Strickland,* the Supreme Court instructed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."[52]

Where an alleged error falls within the ambit of trial strategy, such alleged error does not establish ineffective assistance of counsel.[53] "The time and manner of making objections is part of the trial strategy decision-making of the trial attorney."[54] Further, "[w]hen the substantive issue that an attorney has not raised has no merit, then the claim that the attorney was ineffective for failing to raise the issue

---

[49] See *State v. Hoffman,* 98-3118 (La. 4/11/00), 768 So.2d 542, 575-76; *State v. Casimer,* 12-678 (La. App. 5 Cir. 3/13/13), 113 So.3d 1129, 1141; *State v. Dominguez,* 14-1 (La. App. 5 Cir. 8/28/14), 148 So.3d 648, 662-63.

[50] See *Strickland,* 466 U.S. at 690; *State v. Jordan,* 35,643 (La. App. 2 Cir. 4/3/02), 813 So.2d 1123, 1133; *State v. Wilson,* 93-617 (La. App. 5 Cir. 1/25/94), 631 So.2d 1213, 1222.

[51] *Soler, supra*, 93-1042, 636 So.2d at 1075.

[52] 466 U.S. at 690-91.

[53] See *State v. Stewart,* 08-1265 (La. App. 5 Cir. 5/26/09), 15 So.3d 276, 283; *State v. Singleton,* 05-634 (La. App. 5 Cir. 2/14/06), 923 So.2d 803, 811.

[54] *State v. Moore,* 15-644 (La. App. 5 Cir. 3/15/17), 215 So.3d 951, 968.

also has no merit."[55]  General statements and conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel.[56]

In order to demonstrate that appellate counsel was ineffective, a defendant must show that the appellate court would have granted relief had the issue been raised on appeal.[57]  Thus, in order to evaluate a claim of ineffective assistance of appellate counsel, a court must "counter-factually determine the probable outcome on appeal had counsel raised the argument."[58]  We have held that an appellate attorney is not required to advance every argument, regardless of merit, urged by the appellant.[59]  Instead, appellate counsel should winnow out weaker arguments on appeal and focus, at most, on a few key issues.[60]

As stated above, the district court found that, not only had Lavigne not carried his burden of proof on these claims, but that counsel had not been insufficient.

Against that backdrop, we turn to Lavigne's specific assertions of ineffective assistance of counsel.

**(b) Claims of Ineffective Assistance of Trial Counsel Relating to the Mandatory Sentence References, Cause Challenges and the Jury Instruction as to the Mandatory Sentence.**

We have already ruled that, even if not procedurally barred, Lavigne's claims relating to references by the prosecutor in *voir dire,* opening statements and closing argument to the mandatory life sentence for second degree murder were permissible. Accordingly, defense counsel was not ineffective for failing to object to these references.  Indeed, given that Lavigne was a young man at the time of trial, it is plausible that trial counsel wanted jurors to be aware of the harsh mandatory

---

[55] *State v. Williams,* 613 So.2d 252, 256-57; *State v. Francois,* 13-615 (La. App. 5 Cir. 1/13/14), 134 So.3d 41, 59.

[56] *State v. Fisher,* 19-488 (La. App. 5 Cir. 6/24/20), 299 So.3d 1238, 1247.

[57] *State v. Wilt,* 14-823 (La. App. 5 Cir. 4/29/15), 170 So.3d 317, 326-27.

[58] *United States v. Reinhart,* 357 F.3d 521, 530 (5th Cir. 2004), citing *United States v. Phillips,* 210 F.3d 345, 350 (5th Cir. 2000).

[59] *State v. Castillo,* 13-552 (La. App. 5 Cir. 10/29/14), 167 So.3d 624, 653, *writs denied,* 14-2567 (La. 9/18/15), 178 So.3d 145 and 14-1678 (La. 10/2/15), 178 So.3d 580.

[60] *Castillo, supra.*

sentence when considering second degree murder and the lesser included offenses that do not carry a mandatory life sentence. Defense counsel's failure to object to the prosecutor's references to the mandatory sentence fall within the ambit of trial strategy and does not establish ineffective assistance of counsel.

We have also already ruled that it was not error for the district court to sustain the prosecution's cause challenges to two jurors who expressed that they could not consider a plea of guilty to second degree murder because of the mandatory life sentence,[61] and in any event, trial counsel did object to the allowance of these challenges, although unsuccessfully. Trial counsel was not ineffective on that ground.

Trial counsel was also not ineffective for failing to object to the district court's jury instruction relative to the mandatory sentence for a conviction of second degree murder for the reasons already stated above. It was within the district court's discretion to advise the jury of the mandatory sentence and we have found no abuse of that discretion.

**(c) Claims of Ineffective Assistance of Trial Counsel for Failure to Object to Improper Statements/Arguments of the Prosecution Unrelated to the References to the Mandatory Sentence.**

Lavigne claims that trial counsel was ineffective for failing to object to the prosecutor's characterization of the shooting of Connor as being "execution-style;" the prosecution's statements that: Connor "bled out in his apartment;" Connor knew that Lavigne was armed after the initial confrontation between the two men; Connor was not lying in wait; Connor never fired his gun; the fact that Connor's fatal wounds were to the front of his body prove second degree murder; Lavigne was not in imminent danger when Connor got back to his own apartment; the credibility of Brown and Tibbitt would have been called into question had they testified at trial;

---

[61] *Frey,* 568 So.2d 577; La. C.Cr.P. art. 800(B).

Lavigne's statements to police and Beasley's testimony at trial that Connor pointed his gun at Lavigne and Beasley was not credible; Connor never pointed his gun at Lavigne and Beasley; and the prosecution's comments in rebuttal on the effects of heroin.

We have already held as to opening argument that "absent bad faith on the part of the prosecutor or clear and substantial prejudice, the reference in the opening statement to evidence later ruled inadmissible or not produced is not [reversible error]."[62] We have also further held that a prosecutor retains considerable latitude in making closing arguments[63] and is permitted to make statements during closing arguments drawn from a range of reasonable conclusions from the facts in evidence;[64] and that, moreover, "[e]ven if the prosecutor exceeds this latitude, a reviewing court will not review a conviction unless thoroughly convinced that the argument influenced the jury and contributed to the verdict."[65]

The statements and arguments of the prosecution of which Lavigne complains were well within the bounds of acceptable commentary as to what the evidence would show and what the evidence had shown. Trial counsel's decisions as to whether and when to raise objections to testimony, evidence and arguments fall within the ambit of trial strategy and do not support a claim for ineffective assistance of counsel.

**(d) Claim of Ineffective Assistance of Trial Counsel for Failing to Object to Detective Engler's False Testimony and the Prosecution's Failure to Correct this False Testimony in Violation of *Napue*.**

---

[62] *State v. Horne,* 554 So.2d 820, 824 (La. App. 5 Cir. 1989), citing *State v. Bell,* 279 So.2d 164 (La. 1973); *State v. Green,* 343 So.2d 149 (1977).

[63] *State v. Casey,* 1999-0023, p. 17 (La. 1/26/00), 775 So.2d 1022, 1036; *State v. Byrne,* 483 So.2d 564 (La. 1986), *cert. denied,* 479 U.S. 871, 107 S.Ct. 243, 93 L.Ed.2d 168 (1986); *State v. Morris,* 404 So.2d 1186 (La. 1981); *State v. Soler,* 93-1042 (La. App. 5 Cir. 4/4/94), 636 So.2d 1069; *State v. Cole,* 15-358, p. 18 (La. App. 5 Cir. 12/23/15), 182 So.3d 1192, 1204.

[64] *Cole,*15-538, p. 18, 182 So.3d at 1204, citing, *State v. Breza,* 394 So.2d 254, 256 (La. 1981).

[65] *Id.*, citing *Frank,* 99-553, 957 So.2d at 741; *State v. Martin,* 93-0285 (La. 10/17/94), 645 So.2d 190, 200; see also, *Byrne,* 483 So.2d at 1357; *Soler,* 636 So.2d at 1082 ("Before reversing a jury verdict because of a prosecutor's closing remarks…the appellate court must be convinced the objectionable statements were so inflammatory or prejudicial that they influenced or contributed to the guilty verdict. (citations omitted)).

We have discussed the issue raised by Lavigne relative to allegedly false testimony presented by Detective Engler relative to the lack of search warrants being served for areas under the control of Brown and Tibbitt and the prosecutor's failure to correct the allegedly false testimony and have found that Lavigne has not met the threshold of demonstrating that Detective Engler's testimony was false. Detective Engler merely testified as to his investigation and why he did or did not take certain actions in the course of his investigation. Because there is no evidence in the record to suggest that Detective Engler provided false testimony, Lavigne's counsel was not ineffective for failing to object to it. Likewise, there was no *Napue* violation to which Lavigne's trial counsel should have objected. This claim does not support Lavigne's claim of ineffective assistance of counsel.

**(e) Claim of Ineffective Assistance of Trial Counsel in Stating in *Voir Dire* that a Life Sentence may be Appropriate for Second Degree Murder.**

During *voir dire* a potential juror, Mr. Leon (as to whom the prosecution subsequently exercised a peremptory challenge), had indicated on questioning by the prosecutor that he would not be able to consider a verdict of guilty to second degree murder in light of the fact that a guilty verdict would subject Lavigne to a mandatory life sentence without benefits of probation, parole or suspension of sentence. In an attempt to rehabilitate Mr. Leon as a juror, Lavigne's trial counsel suggested to Mr. Leon that a life sentence might be appropriate for the "worst of the worst."[66] In context, it is clear that trial counsel was not trying to imply that Lavigne was one of the "worst of the worst," as counsel was also suggesting to potential jurors that the shooting of Conner was justified or was committed in the heat of passion. Trial counsel was merely trying to rehabilitate Mr. Leon as a juror, albeit inartfully. An attorney's actions during *voir dire* fall into the ambit of trial strategy and do not support a claim of ineffective assistance of counsel.

---

[66] Supp. R. p. 281-82.

**(f) Claim that Appellate Counsel was Ineffective for Failing to Adequately Present to this Court Lavigne's Claim of Insufficiency of Evidence.**

Lavigne claims that his appellate counsel was ineffective because she did not adequately present his claim of insufficiency of the evidence to this Court on his direct appeal. In particular, Lavigne argues that appellate counsel's performance was deficient because she did not "point out that the prosecutor admitted in a pretrial hearing that Connor committed an overt act."[67] In fact, appellate counsel presented a lengthy and detailed argument on the issue of whether the evidence was sufficient to sustain Lavigne's conviction. Included in her argument on that issue was that, on multiple occasions on the day of the shooting, Connor was the aggressor who provoked confrontations with Lavigne and/or Beasley, that Connor was armed and that Connor pointed his gun at Lavigne and Beasley prior to Lavigne opening fire. Appellate counsel argued that Connor's provocation and aggression supported Lavigne's claim for self-defense and/or the lesser included offense of manslaughter. Thus, Connor's overt acts were squarely before this Court on Lavigne's direct appeal. Nevertheless, we found the evidence sufficient to exclude Lavigne's assertion of self-defense and, indeed, to sustain Lavigne's conviction for second degree murder, stating:

> It was undisputed at trial that defendant and Mr. Connor both had guns on the day of the shooting. In his statement defendant admitted that after having a verbal altercation with Mr. Connor, he armed himself with a weapon before going to walk his dog at the park. He claimed that [Mr. Conner] came from across the street, pointed a gun at him, and he started shooting. He also alleged that defendant shot at him eight times and that he believed the victim hit something. Despite defendant's assertions, there was no testimony or evidence presented that Mr. Connor fired a weapon that day…[T]he gun visible in Mr. Connor's hand in the surveillance video appeared to be consistent with a revolver. The testimony established that none of the ballistic evidence recovered from the crime scene in this case was consistent with being fired from a revolver. However…numerous fired cartridge casings found at the crime scene were fired from defendant's Glock handgun.

---

[67] Application, p. 73. It appears that the prosecutor's reference to Connor having committed an overt act was made during a pretrial hearing on Lavigne's motion to introduce evidence of the Connor's reputation in the neighborhood as a quarrelsome, belligerent, sometimes violent, heroin addict. An excerpt of that hearing transcript appears at p. 143 of Lavigne's Application.

[Investigators] were unable to determine that the copper jacket and copper projectile [found at the scene] were fired from [the Glock handgun], but indicated that they were consistent with this type of gun.

Even if the jurors believed that at some point during the incident Mr. Connor may have provoked defendant, they apparently concluded that any such provocation by him was insufficient to deprive an average person of self-control, but rather that defendant acted with deliberation and reflection, thus warranting a verdict of second degree murder rather than manslaughter…By returning a guilty verdict, it appears the jury did not find that defendant established the mitigatory factors of 'sudden passion' and 'heat of blood' by a preponderance of the evidence.

Considering the circumstances of this case, we find that the arguments raised by defendant relating to the sufficiency of the evidence are without merit. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant did not act in self-defense and that defendant failed to carry the burden necessary to reduce the conviction to manslaughter.[68]

Lavigne requested and was granted permission to file a *pro se* supplemental brief to this Court on his direct appeal, but failed to do so. On the showing made, Lavigne has failed to satisfy the first prong of the *Strickland* test in that he has not demonstrated that the performance of his appellate counsel was deficient, much less so deficient that appellate counsel was not functioning as counsel within the meaning of the Sixth Amendment, and has failed to meet his burden of proof. This claim also fails.

## ASSIGNMENT OF ERROR NO. 5
### (Cumulative Errors)

Lavigne asserts that cumulative errors denied him a fair trial. The exclusive grounds for an application for post-conviction relief are set forth in La. C.Cr.P. art. 930.3 and do not include cumulative error. The district court denied this claim, stating that "[t]he court has addressed petitioner's claims individually, finding no merit. The cumulating of these claims does not provide a basis for relief as each claim still has no merit."[69] Cumulative error is not recognized as a valid basis for

---

[68] *Lavigne*, 22-282, 365 So.3d at 947-48. (Footnotes omitted).
[69] Application, p. 324.

overturning a conviction under Louisiana jurisprudence, as the combined effect of assignments of error, none of which warrant reversal standing alone, do not deprive a defendant of his right to a constitutionally fair trial.[70]  This claim is without merit.

## CONCLUSION

Having found no error in the trial court's rulings on the issues presented in Lavigne's APLC, the instant Application for Supervisory Writs is **DENIED.**

Gretna, Louisiana, this 16th day of January, 2025.

**FHW**
**SJW**
**JJM**

---

[70] *State v. Draughn,* 05-1825 (La 1/17/07), 950 So.2d 583, 629, and cases cited therein, *cert. denied,* 522 U.S. 1012, 128 S.Ct. 537, 169 L.Ed.2d 377 (2007);  *State v. Rochon,* 98-717 (La. .App. 5 Cir. 3/10/99), 733 So.2d 624, 633; *State v. Ayo,* 08-468 (La. App. 5 Cir. 3/24/09), 7 So.3d 85, 104, *writ denied sub nom, State ex rel. Ayo v. State,* 09-1026 (La. 3/5/10), 28 So.3d 1006.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF DISPOSITION CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE DISPOSITION IN THE FOREGOING MATTER HAS BEEN TRANSMITTED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 4-6** THIS DAY **01/16/2025** TO THE TRIAL JUDGE, THE TRIAL COURT CLERK OF COURT, AND AT LEAST ONE OF THE COUNSEL OF RECORD FOR EACH PARTY, AND TO EACH PARTY NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**24-KH-403**

CURTIS B. PURSELL
CLERK OF COURT

### E-NOTIFIED
24th Judicial District Court (Clerk)
Honorable June B. Darensburg (DISTRICT JUDGE)
Thomas J. Butler (Respondent)

### MAILED
Lanard Lavigne #765263 (Relator)
Louisiana State Penitentiary
Angola, LA 70712